IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UPPER VALLEY BEHAVIORAL
HEALTH,

    Plaintiff,

          vs.                                               No. 2:24-CV-00106-KG-KK

HEALTH CARE SERVICE
CORPORATION, an Illinois Mutual Legal
Reserve Company,

    Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

**THIS MATTER** is before the Court on Defendant Blue Cross Blue Shield of New Mexico's ("BCBSNM") Motion to Dismiss Plaintiff Upper Valley Behavioral Health's First Amended Complaint, filed on April 5, 2024. (**Doc. 30**). Upper Valley filed its Response, (**Doc. 31**), on April 19, 2024, and BCBSNM its Reply, (**Doc. 32**), on May 03, 2024. Having considered the briefing and relevant case law, the Court **GRANTS in part** and **DENIES in part** BCBSNM's Motion to Dismiss, (**Doc. 30**).

### BACKGROUND[1]

Upper Valley is "a mental health care provider specializing in treating common mental health conditions . . . through telemedicine and tailored prescription plans." (**Doc. 28**) at 9, ¶ 21. BCBSNM is a customer-owned managed care company administering Medicaid, commercial health insurance, and health benefit plans for businesses, government employees, individuals, and families in New Mexico. *Id.* at 2, ¶ 1; (**Doc. 30**) at 3. To deliver health coverage,

---

[1] The facts in this section are taken from Upper Valley's Amended Complaint and its accompanying exhibits. (**Doc. 28**). The Court accepts the allegations in Upper Valley's Complaint as true and recites them in a light most favorable to Upper Valley.

1

BCBSNM contracts with various health care providers, including mental health care providers, who deliver "in-network" care to BCBSNM's members. **(Doc. 28) at 2, ¶ 1: (Doc. 30) at 3**. One of these health care providers was Upper Valley. *Id.*

This case arises out of a dispute between BCBSNM and Upper Valley about improper billing and coding practices. *Id.* **at 15, ¶ 41**. The dispute involves two agreements: (1) the Behavioral Services Entity Agreement ("BHSEA"), in which Upper Valley agreed to provide telehealth services to New Mexico residents insured by BCBSNM, and (2) a Settlement Agreement, which the parties executed after an audit revealed Upper Valley overcharged BCBSNM for certain services.

**I.     BHSEA Agreement:**

In the BHSEA, BCBSNM agreed to provide prompt payment to Upper Valley for covered services upon the submission of a "clean claim":

> [BCBSNM] shall provide prompt payment to [Upper Valley] for Covered Services rendered to Members. Such payment shall be made within 45 calendar days for paper claims and 30 calendar days for electronic claims following receipt of a properly completed and submitted clean claim. "Clean claim" for purposes of this provision is defined as a manually or electronically submitted claim that contains all the required data elements necessary for accurate adjudication without the need for additional information from outside of [BCBSNM's] system and contains no deficiency or impropriety, including lack of substantiating documentation currently required by [BCBSNM][.]

**(Doc. 30-1) at 8–9, § III(B)(2)**.

Under the BHSEA, "covered services" are "medically necessary and preventative health care services that are benefits of [BCBSM's] membership, as described and limited in the applicable Membership Certificate as amended from time to time." *Id.* **at 3, § I(F)**.

The BHSEA incorporated BCBSNM's Provider Reference Manual ("PRM"). **(Doc. 30-1) at 4, § I(P)**. If Upper Valley failed to comply with the PRM, BCBSNM could either deny coverage for the services or terminate the BHSEA. *Id.* **at 10, § III(C)(5)**.

In the PRM, BCBSNM reserved the right to (1) "develop and institute any and all systems, edits and other solutions to ensure provider compliance with clinical payment and coding policies," (**Doc. 28-1**) at 75–76, § 8.7; and (2) "request medical records and/or conduct site visits to review, photocopy and audit [Upper Valley's] records, without prior notice, to verify medical necessity and appropriateness of payment without prior notice." *Id.* at 186, § 18.1.14.

The PRM in turn incorporates BCBSNM's Clinical Payment and Coding Policies ("CPCPs"). *Id.* at 75–76. The CPCPs "are based on criteria developed by specialized professional societies, national guidelines, (e.g. Milliman Care Guidelines (MCG)) and the CMS Provider Reimbursement Manual." *Id.* at 75. Further, Upper Valley concedes the BHSEA, PRM and CPCPs required it to bill consistent with numerous billing standards. (**Doc. 31**) at 13.

**II.    BCBSNM's First Audit:**

In September 2022, following fraud allegations against Upper Valley, BCBSNM audited Upper Valley. (**Doc. 28**) at 13, ¶ 33. During this audit, BCBSNM found insufficient documentation to support (1) Upper Valley billing psychotherapy services in conjunction with E/M services for some claims and (2) the complexity of the E/M code billed for some claims. *Id.* at 14, ¶ 39.

After the audit, BCBSNM issued a "Notice of Overpayment and Refund Demand." *Id.* at 14, ¶ 37. In response, Upper Valley retained a medical billing expert to conduct an independent audit of the same claims. *Id.* at 15, ¶ 40. Upper Valley's independent audit found Upper Valley correctly billed for certain psychotherapy and E/M claims, while also finding areas of overbilling consistent with BCBSNM's findings. *Id.* Upper Valley then contacted BCBSNM, offering to fully reimburse BCBSNM for the overbilling identified in both audits. *Id.*

### III.    Settlement Agreement:

Following these audits, BCBSNM and Upper Valley entered into a settlement agreement reflecting Upper Valley's offer to BCBSNM. *Id.* **at 15–16, ¶ 42**. During the settlement, BCBSNM "further represented that any settlement agreement between it and Upper Valley would need to reflect that Upper Valley would thereafter bill for psychotherapy and E/M claims in a manner that is consistent with 'accepted practice and billing standards for those services.'" *Id.* BCBSM explained "it would later document the specifics of that in a 'negotiated settlement agreement.'" *Id.* **at 16, ¶ 42**.

"Induced by and relying upon the representation, Upper Valley fully accepted BCBSNM's settlement offer upon BCBSNM presenting the following language regarding the specifics of the 'accepted practice and billing standards'":

> Upper Valley agrees to cease billing BCBSNM for psychotherapy services . . . in a manner that is inconsistent with the guidelines and descriptions for such services set forth in the current version of the CPT Code Manual, applicable BCBSNM medical policy, applicable BCBSNM clinical payment and coding policy, or other generally accepted federal or national billing guidelines[.]

*Id.* **(original emphasis omitted)**; **(Doc. 30-2) at 4**. The Court will hereinafter refer to this provision as the "Improper Billing Provision."

In exchange for Upper Valley agreeing to refund BCBSNM at an agreed upon amount and complying with the Billing and Claims Procedures, BCBSNM agreed to release Upper Valley from any further action or disputes arising from or related to BCBSNM's Notice of Overpayment and Refund Demand or the Dispute covering the period from April 1, 2019, to July 31, 2022:

> For and in consideration of the mutual promises given by the parties pursuant to this Agreement, upon the Effective Date of this Agreement, BCBSNM . . . fully release[s] and forever discharge[s], to the fullest extent permissible by law, Upper Valley . . . from any and all suits, debts, demands, obligations, liabilities, actions, causes of actions, accounts, bills, contracts, promises, damages, statutory penalties, judgments, or executions of whatever kind or nature, whether known or unknown, whether past, present or future, whether actual or exemplary, whether contingent, prospective or matured, whether arising in contract, tort, constructive trust, statute or otherwise, whether in law or in equity,

prejudgment and post-judgement interest and attorneys' fees (collectively, "Losses") which BCBSNM may have against the Upper Valley…that arise from or are connected with the Letter or the Dispute, for the Relevant Time Period.

**(Doc. 30-2) at 3–4**.  The Court will hereinafter refer to this provision as the "Release Provision."

### IV.   BCBSNM's Second Audit:

A few months after the parties entered into the Settlement Agreement, BCBSNM audited Upper Valley again.  *Id.* **at 3, ¶ 5**.  BCBSNM made the same findings as it did in the first audit.  *Id.*  On September 05, 2023, BCBSNM sent Upper Valley a Notice of Pre-Payment Review, notifying it that all of its claim submissions would be subject to pre-payment review.  **Doc. 28-6 at 3**.  The letter explained "the basis for pre-payment review is that the medical records BCBSNM has received for your office on August 14, 2023, indicate services were provided, but the documentation in the medical records did not support the services billed on the claims submitted to BCBSNM."  *Id.* **at 2**.  The Notice further explained "the reviewed documentation did not support the record keeping requirements for the level of medical decision-making concerning evaluation and management (E&M) services."  *Id.*

On September 6, 2023, Upper Valley contacted BCBSNM about the Notice of Pre-Payment Review.  **(Doc. 28-9) at 2**.  Again, on September 8, 2023, Upper Valley contacted BCBSNM requesting specifics on the issues with its claim submissions.  *Id.* **at 3**.  BCBSNM responded the same day, promising a separate letter explaining the Notice of Prepayment Review.  *Id.* **at 3**.  BCBSNM never sent a separate letter.  *Id.*  On September 11 and 14, 2023, Upper Valley again contacted BCBSNM, seeking specific guidance about the pre-payment review process.  *Id.* **at 5–6**, **8–9**.

Following, the Notice of Pre-Payment Review, BCBSNM began sending denial notices to Upper Valley.  **(Doc. 28-8)**.  These notices did not specify the reasons for denial just generally stated, "[b]ased on the denials of a review organization."  *Id.* **at 2**.  Around this same time, Upper

Valley began receiving dozens of substantively identical requests for medical records ("RMRs") from BCBSNM for claims subject to pre-payment review. (**Doc. 28**) at 22. BCBSNM erroneously directed these RMRs towards a laboratory and sought "requisition/orders" and "validity testing." *Id.*

In November 2023, Upper Valley closed its doors. *Id.* at 4, ¶ 7. According to Upper Valley, prepayment review resulted in Upper Valley being denied compensation from BCBSNM for 114 claims—totaling approximately $9,188.40 or approximately 30% of Upper Valley's monthly revenue. *Id.*

On December 6, 2023, BCBSNM sent Upper Valley a letter terminating the BHSEA, effective February 29, 2024. (**Doc. 28-10**). In this termination letter, BCBSNM explained "the reason(s) for this termination are: utilizing improper billing practices with respect to claims for psychotherapy and evaluation and management services; insufficient adherences to BCBSNM's medical record documentation requirements; and refusal to honor its contractual obligations as set forth in the parties' mutual settlement agreement, which arose from similar disputed billing practices." (**Doc. 28-12**) at 2.

### V. Upper Valley's Lawsuit:

On January 5, 2024, Upper Valley filed the instant lawsuit against BCBSNM in New Mexico's Second Judicial District Court. (**Doc. 1-2**). BCBSNM then removed the case to federal court. (**Doc. 1**).[2] In its Amended Complaint, Upper Valley asserts claims against BCBSNM for breach of contract under both the BHSEA and the Settlement Agreement, along with claims for fraudulent inducement, breach of the duty of good faith and fair dealing, and violations of the New Mexico Insurance Code. (**Doc. 28**). In the instant motion, BCBSNM

---

[2] The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. (**Doc. 1**) at 1; (**Doc. 28**) at 9.

seeks dismissal on all Upper Valley's claims against it under Federal Rule of Civil Procedure 12(b)(6). (**Doc. 30**).

## LAW REGARDING RULE 12(b)(6) MOTION TO DISMISS

"To survive a [12(b)(6)] motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This does not mean that the complaint needs detailed factual allegations; however, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In reviewing a motion to dismiss, the Court must assume all the complaint's factual allegations are true, but it is not bound to accept as true legal conclusions, including any "legal conclusion couched as a factual allegation." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Thus, the Court "should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). In deciding whether the plaintiff's stated claim for relief is adequate, the Court views "the totality of the circumstances as alleged in the complaint in the light most favorable to [the plaintiff]." *Jones v. Hunt*, 410 F.3d 1221, 1229 (10th Cir. 2005). The essential question is whether the plaintiff nudged his or her claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## DISCUSSION

I.  **Breach of the Settlement Agreement:**

In its Amended Complaint, Upper Valley alleges BCBSNM: (1) breached the Settlement Agreement's Improper Billing Provision by requiring Upper Valley's claim submissions to satisfy numerous new billing standards in the second audit; and (2) breached the Settlement Agreement's Release Provision by imposing prepayment medical necessity review of Upper Valley's claim submissions based on the first audit's findings and terminating the BHSEA based on the first audit's findings. (**Doc. 28**) **at 26–27**.

A. **Improper Billing Provision:**

Beginning with the Settlement Agreement's Improper Billing Provision, BCBSNM argues it did not breach this provision by requiring Upper Valley's claim submissions to satisfy numerous billing standards because, like the BHSEA, this provision requires Upper Valley to comply with numerous billing standards to receive payment. (**Doc. 30**) **at 21**. In response, Upper Valley contends the use of the disjunctive "or" in the Settlement Agreement's Improper Billing Provision suggests, following the settlement, BCBSNM only required Upper Valley to adhere to one billing standard, rather than numerous. (**Doc. 31**) **at 12–13**.

Assuming Upper Valley's allegation is true — that BCBSNM, before the Settlement Agreement, indicated Upper Valley's future claim submissions needed to comply with only one billing standard — the use of the disjunctive "or" in the Improper Billing Provision could be ambiguous. *See Randles v. Hanson*, 2011-NMCA-059, ¶ 26 ("[A] district court may consider extrinsic evidence in making its preliminary finding of whether a contractual provision is ambiguous." (citing *Mark V, Inc. v. Mellekas*, 1993-NMSC-001, ¶ 11)). Therefore, the Court denies dismissal on this claim until it is resolved whether BCBSNM made this alleged representation to Upper Valley, as this determination is essential to interpreting and applying the

8

Improper Billing Provision. For the same reason, the Court will allow Upper Valley's fraudulent inducement claim to proceed.

However, if Upper Valley's allegation regarding BCBSNM's representation is later unsubstantiated, the Court agrees with BCBSNM that the use of the term "or" in the Improper Billing Provision " unambiguously indicates it is violated if Upper Valley engages in any one of the enumerated acts — that is billing in a manner inconsistent with the current version of the CPT Code Manual, billing in a manner inconsistent with the applicable BCBSNM medical policy, billing in a manner inconsistent with the applicable BCBSNM clinical payment and coding policy or billing in a manner inconsistent with other generally accepted federal or national billing guidelines.

Under New Mexico law, when a contract, statute, or agreement, such as the Settlement Agreement in this case, sets forth a prohibition with a disjunctive list, the violation of any one of the enumerated acts constitutes a breach/violation of the prohibition. *See State v. Dunsmore*, 1995-NMCA-012, ¶ 2 (explaining use of disjunctive "or" in a statute stating, "[i]t is unlawful for a felon to receive, transport, or possess any firearm or destructive device in this state," indicated the statute could be violated by any one of the three enumerated actions).

    **B. Release Provision:**

Turning next to the Settlement Agreement's Release Provision, the Court concludes, at this stage, this provision covers any "actions" taken by BCBSNM, if those actions arose out of or were related to BCBSNM's findings in the first audit.

In its Motion to Dismiss, BCBSNM contends that the only plausible conclusion based on the facts alleged in the Complaint—including BCBSNM's Notice of Pre-Payment Review letter, which referenced medical records received from Upper Valley on August 14, 2023, and stated that those records did not support the services billed—is that BCBSNM relied on the second

9

audit, not the first, to initiate prepayment review. **(Doc. 30)** at 23. BCBSNM further asserts that, while it agreed to release its "Losses" arising from Upper Valley's improper billing of psychotherapy and E/M services from April 2019 through July 2022, it did not agree to disregard Upper Valley's history of improper billing in future dealings. *Id.*

While the Court agrees with BCBSNM that the decision to impose pre-payment review is not plausibly related to the first audit's findings, it finds the termination of the BHSEA plausibly related to those findings.

The Notice of Pre-Payment Review states, "the basis for the pre-payment review is that the medical records BCBSNM received from your office on August 14, 2023, indicate services were provided, but the documentation did not support the services billed on the claims submitted to BCBSNM." **(Doc. 28-6) at 2**. This language indicates BCBSNM imposed pre-payment review based on the findings of the second audit, not the first.

In the termination letter, however, BCBSNM cites "improper billing practices with respect to claims for psychotherapy and evaluation and management services." **(Doc. 28-12) at 2–3**. One of the findings in the first audit was Upper Valley's improper billing practices for the same services mentioned in the letter. **(Doc. 28) at 2, ¶ 3**. Therefore, it is plausible BCBSNM's decision to terminate the BHSEA was based on both the first and second audit's findings.

As a result, Upper Valley plausibly alleged a breach of contract claim based on BCBSNM's termination of the BHSEA, but not based on BCBNM's implementation of pre-payment review.[3]

---

[3] The Court highlights that if Upper Valley's second audit was accurate and revealed improper billing practices, such actions could constitute a breach of the Settlement Agreement, precluding Upper Valley from asserting a breach of contract claim against BCBSNM for any subsequent breach. *See KidsKare, P.C. v. Mann*, 2015-NMCA-064, ¶ 20 ("A material breach of a contract excuses the non-breaching party from further performance under the contract.")

II.  **Breach of the BHSEA:**

In its Amended Complaint, Upper Valley alleges BCBSNM materially breached the BHSEA by (1) failing to promptly compensate Upper Valley by requiring a review of the underlying medical necessity of its claim submissions before issuing payment and (2) imposing pre-payment review.  (**Doc. 28**) **at 28–29**.

In its Motion to Dismiss, BCBSNM argues Upper Valley failed to state a breach of contract claim under the BHSEA, asserting the BHSEA neither mandated prompt payment for every claim nor prohibited BCBSNM from imposing pre-payment review.  (**Doc. 32**) **at 7, 8–9**. In support, BCBSNM references BHSEA §§ I(F), II(B)(1–3), III(B)(1), as well as PRM §§ 4.5.1, 8.3.5, 18.1.5, 18.1.14, and CPCP24.  *Id.* **at 5**.

The Court agrees with BCBSNM.  The BHSEA's language is clear: the prompt payment requirement applies only if the service provided by Upper Valley qualifies as a "covered service" — meaning it was medically necessary — and its claim is "clean." (**Doc. 30-1) at 8–9, § III(B)(2)**.  Accordingly, the outcome of Upper Valley's claim hinges on whether the claims BCBSNM placed under pre-payment review involved covered services and qualified as "clean claims."  Because the parties dispute whether Upper Valley provided sufficient documentation to support the codes billed on the claim submissions (*i.e.*, whether the claims were clean), (**Doc. 28**) **at 15, ¶ 41**, the Court will permit this claim to proceed.

Next, the BHSEA did not prohibit BCBSNM from imposing pre-payment review.  The PRM explicitly authorized BCBSNM "to develop and institute any and all systems, edits and other solutions to ensure provider compliance with clinical payment and coding policies," (**Doc. 28-1**) **at 75–76, § 8.7**, which supported BCBSNM's authority to use pre-payment reviews as a compliance enforcement tool.  Further, the BHSEA required Upper Valley to provide medical records and other claim-related information upon request, and BCBSNM is entitled to review

11

those records to verify the site of service, level of care, and accuracy of billing. *Id.* **at 186, § 18.1.1**. Taken together, these provisions establish pre-payment review was within BCBSNM's contractual rights.

Finally, the Court is not persuaded by Upper Valley's assertions that BCBSNM imposing pre-payment review violated §§ 10, 18.1.4, or 18.1.5 of the PRM. § 10 addresses pre-service review, outlining the types of reviews BCBSNM may conduct before services are rendered. **(Doc. 28-1) at 101, § 10**. This provision does not govern, much less prohibit, post-service claim reviews. In fact, § 10 reinforces BCBSNM's discretion to withhold payment post-service. Even after a preauthorization or predetermination service, § 10 clarifies "neither prior authorization nor predetermination guarantee benefits or payment[.]" *Id.*

§ 18.1.4 permitted BCBSNM to retroactively recover payments for services that failed to meet benefit criteria or lack medical necessity. *Id.* **at 183, § 18.1.4**. However, this provision simply provided a remedy if an overpayment was discovered post-payment, it did not preclude BCBSNM from reviewing claims for those same requirements before issuing payment. Likewise, § 18.1.5 governed BCBSNM's options for reclaiming overpayments if Upper Valley refused to return excess funds. *Id.* **at 184, § 18.1.5**. Nothing in this provision limited BCBSNM's ability to conduct pre-payment review to avoid overpayments in the first place.

Consequently, BCBSNM is entitled to judgment on Upper Valley's breach of contract claim based on BCBSNM imposing pre-payment review, but not Upper Valley's breach of contract claim based on BCBSNM's failure to promptly pay Upper Valley for each claim submission.

### III.    Breach of the Implied Duty of Good Faith and Fair Dealing:

In its Amended Complaint, Upper Valley alleges that BCBSNM breached the duty of good faith and fair dealing through its bad faith performance of its payment obligations to Upper

12

Valley.  (Doc. 28) at 30.  As an example, Upper Valley cites BCBSNM's failure to provide guidance regarding the documentary requirements for claim compensation under pre-payment review even after Upper Valley made repeated requests for such guidance.  *Id.*

"The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement." *Bourgeous v. Horizon Healthcare Corp.*, 1994-NMSC-038, ¶ 16 (citation omitted).

In its Amended Complaint, Upper Valley alleges BCBSNM did not respond to Upper Valley when it requested, multiple times, more information regarding pre-payment review and more explanation why BCBSNM was denying its claim submissions, (Doc. 28-9), nor did it provide this information in any notices of denial, (Doc. 28-8).  Assuming these allegations are true, Upper Valley states a plausible breach of the implied covenant of good faith and fair dealing claim.  *See Allsup's Convenience Stores, Inc. v. N. River Ins. Co.*, 1999-NMSC-006, ¶ 35 (explaining if good faith and fair dealing require it, there can be an affirmative duty to act to prevent the denial of a party's rights under the agreement); *Gilmore v. Duderstadt*, 1998-NMCA-086, ¶ 24 ("A party breaches the covenant of good faith and fair dealing when he or she interferes or fails to cooperate in the other party's performance.").

IV. **Breach of the New Mexico Insurance Code:**

In its Amended Complaint, Upper Valley asserts that BCBSNM violated NMSA § 59A-16-21.1(c) as well as New Mexico Administrative Code §§ 13.10.28.9C(2)(a) and 13.10.28.8.B(5) by failing to engage in a good faith effort to notify Upper Valley of "all the specific reasons why BCBSNM [was] not liable for the claim or that specific information [was] required to determine liability for the claim," and by repeatedly requesting medical records from a laboratory.  (Doc. 28) at 23, 30–31.

§ 59A-21.1(C) states as follows:

> If a health plan is unable to determine liability for or refuses to pay a claim of an eligible provider . . . the health plan shall make a good-faith effort to notify the eligible provider. . . of all specific reasons why it is not liable for the claim or that specific information is required to determine liability for the claim.

Similarly, §§ 13.10.28.9C(2)(a) and 13.10.28.8(B)(5) require that any notification from a health carrier to a provider regarding an error, omission, or refusal to pay a claim must include either a specific statement outlining the information needed to resolve the issue or a detailed explanation of the reasons for denying payment. Further, a pattern of repetitive requests for the same information constitutes a violation under § 59A-16-20, as outlined in § 13.10.28.8(B)(5).

While BCBSNM argues its Notice of Pre-Payment Review was sufficient to notify Upper Valley of what was deficient with its claim submissions, the Court finds that, at this stage, Upper Valley's allegations plausibly state violations of § 59A-16-21.1(c) as well as §§ 13.10.28.9C(2)(a) and 13.10.28.8(B)(5). Specifically, Upper Valley alleges that: (1) BCBSNM failed to respond to multiple email requests for clarification on claim submission issues, preventing Upper Valley from addressing the problems, (**Doc. 28-9**); (2) BCBSNM's denial notices merely cited findings from a review organization without specifying other reasons for denial, (**Doc. 28-8**); and (3) after imposing pre-payment review, BCBSNM repeatedly sent identical requests for medical records related to laboratory tests, despite Upper Valley not being a laboratory or conducting such tests, (**Doc. 28-7**). Thus, BCBSNM is not entitled to judgment on Upper Valley's New Mexico Insurance Code claims.

V.     **Declaratory Judgment:**

In its Amended Complaint, Upper Valley seeks declaratory judgment under NMSA 1978 § 44-6-2, asserting that: (1) the BHSEA, settlement agreement, and any incorporated documents or policies do not permit BCBSNM to unilaterally impose pre-payment medical necessity

review, and (2) the settlement agreement forbade BCBSNM from implementing pre-payment review of all claims based solely or partially on findings from the first audit.  (**Doc. 28**) **at 32**.

Because the Court concludes BCBSNM acted within its contractual rights to impose pre-payment review and imposed pre-payment review based on the second audit's findings, BCBSNM is entitled to judgment on Upper Valley's declaratory judgment claims.  *See Johnson v. Lally*, 1994-NMCA-135, ¶ 11 ("Under the great weight of the case law, it is clear that past wrongs . . . do not create a foundation for declaratory relief without either continuing illegal actions or continuing consequences to Plaintiff.").

## CONCLUSION

For all the reasons detailed above, the Court dismisses Upper Valley's breach of contract claims based on BCBSNM imposing pre-payment review as well as its declaratory judgment claims.  However, Upper Valley's remaining claims survive BCBSNM's Motion to Dismiss.  As a result, BCBSNM's Rule 12(b)(6) Motion to Dismiss, (**Doc. 30**), is **GRANTED in part** and **DENIED in part**.

**IT IS SO ORDERED.**

/s/ KENNETH J. GONZALES[4]
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the court's PACER public access system.